[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR JUDGMENT OF DISMISSALPURSUANT TO CONNECTICUT RULES OF COURT § 302
The plaintiff has brought an amended complaint dated September 9, 1991 against the defendants. This amended complaint is in seven counts. The First Count through Fifth Count inclusive, are against Connecticut Retail Merchants Association, Inc. (hereinafter "Association") and CRMA, Inc (hereinafter "CRMA") and Sixth Count and Seventh Count are against Thompson 
Peck Inc. (hereinafter TP). CT Page 2505
The plaintiff withdrew its action against Association and CRMA and proceeded to trial against TP. The Sixth Count sounds in anti-trust claiming a restraint of trade by TP pursuant to Conn. General Statutes § 35-26 through 35-30 inclusive. The Seventh Count sounds in tortious interference with contractual relations claiming that TP interfered with the contractual relation between the plaintiff and Association and CRMA by inducing the Association and CRMA to breach their contract with the plaintiff to the plaintiff's financial detriment.
The plaintiff is in the insurance business as a brokerage general agent wholesaling life insurance and health insurance to independent agents. The plaintiff does not sell life insurance or health insurance to individual policy holders, i.e. the general public. The plaintiff is a "wholesaler" of life insurance and health insurance. The plaintiff is a general agent only and does not compete with its agents. The plaintiff is duly authorized to act as an insurance agent for Blue Cross/Blue Shield in order to service its agents.
The defendant, Association is an association of merchants organized for their mutual business and the Association holds a group health insurance policy issued by Blue Cross/Blue Shield under which qualified members of the Association can be enrolled.
The defendant CRMA is a wholly owned subsidiary of Association which is the bookkeeping end of Association for its group health insurance program. CRMA maintained records of those members of Association who subscribed to and paid for the group health Insurance offered through Association. CRMA also did the other incidental accounting duties relative to collecting premiums and remittance thereon.
The defendant, TP is a multi-line retail insurance agency selling directly to the individual policy holder, i.e. general public. TP sells property and casualty insurance, life insurance, accident and health insurance through many companies (carriers). TP dealt with perhaps 50-100 property casualty carriers; 4 or 5 life and health carriers; and 10-15 medical insurance carriers.
In September 1985, Association entered into an agreement with Seaport Insurance Group, Inc. (hereinafter "Seaport") whereby Seaport agreed to market and promote Association's group insurance program to insurance agencies and brokers and to pay a CT Page 2506 commission to those insurance agencies and brokers who enrolled members in its group health program and the Association agreed to pay a commission to Seaport for its successful efforts. This was an agreement between Seaport and Association.
Thereafter Seaport, by virtue of its agreement with Association, entered into an agreement with plaintiff whereby Seaport would pay a 10% commission of premiums obtained by plaintiff for new members and renewals of the Association group health insurance program. This was an agreement between Seaport and plaintiff. Later in time a firm named Bozzuto Inc. became substituted for Seaport in the relationship of the parties hereto.
These relationships continued through the years 1985 to 1990 whereby each party fulfilled their respective responsibility and plaintiff received monthly commission income from Seaport/Bozzutto.
Although the health insurance program offered through Association was initially favorably received, it subsequently became somewhat unfavorably received due to rates, age of group, deductible and co-insurance limits, etc.
Acting with Blue Cross/Blue Shield, the Association adjusted its health insurance program from a time during the years 1985 to 1990, in order that its health insurance continue to be favorably received.
One of the most important aspects of membership in the Association is the opportunity for individual members of the Association to be able to subscribe to Association's group health insurance program based on competitive sales and terms.
In 1990, the Association and its insurance committee recognized that its health insurance program was no longer favorably received and looked into revamping.
Thereafter, the Association acting through its insurance committee, sought out several companies including TP to do business with its individual members based on a newly revised and revamped health insurance program. In the last quarter of 1990, the Association acting through its insurance, independently, singularly and solely decided to do business with TP. Prior to this time, the Association was not aware of the plaintiff or knew of its existence or the role of the plaintiff in the relationship CT Page 2507 of the parties involved hereto.
At about this time, the Association became aware of the plaintiff and the fact that the plaintiff had been receiving commissions on health insurance business written through the association for its members. Because of this fact, the Association acting through its insurance committee insisted that the insurance forms applicable to its newly revised and revamped health insurance program name TP as agent of record. This was referred to the Association's attorney and they reviewed the applicable insurance and introduced such language on said insurance forms. Such language naming TP as agent of record was not prompted or insisted by TP. In fact it is not legally necessary on such applicable insurance forms for TP to do business with the individual members of Association.
As previously indicated, the plaintiff proceeded to trial under counts Sixth and Seventh of its Amended Complaint. At the conclusion of the plaintiff's case in chief the defendant moved for judgment of dismissal pursuant to § 302 of Connecticut Rules of Court. § 302 reads
 "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case."
As regards the sixth count; of the plaintiffs trial brief dated May 26, 1993, relies on Conn. General Statutes § 35-28
which reads in part, "(E)very contract, combination or conspiracy is unlawful when the same are for the purpose, or have the effect of . . . (d) refusing to deal, or coercing, persuading or inducing third parties to refuse to deal with another person"
The court finds that TP did not violate or breach Conn. General Statutes § 35-28. The Association and not TP recognized in 1990 at a time which it was not even aware of plaintiff, that its health insurance program needed revisions and revamping in order to be attractive to its members and to be competitive. The Association decided to do business with TP in order to best serve its individual members. TP was a multi-line retail insurance agency looking for entry into a particular market. Both Association and TP have pursued perfectly CT Page 2508 legitimate and legal business purposes. Association has best served its members with an attractive health insurance program competitively priced. TP is able to expand its business and write health insurance business in conjunction with its other lines with an attractive and competitively priced product. Further plaintiff and TP do not compete in the same markets nor at the same levels of insurance hierarchy.
Plaintiff is a wholesaler by their own admission. TP is a retailer. Plaintiff does not write insurance, it services agents. TP writes insurance and services its individual policy holder.
Based on the credible evidence and testimony produced at trial by the plaintiff in its case in chief, the plaintiff has not sustained its burden of proof as regards restraint of trade pursuant to Conn. General Statutes § 35-28.
As regards count seven, the plaintiff according to its trial brief dated May 26, 1993, claims that the elements of a cause of action for tortious interference with contractual relations include;
 1. That the defendant intentionally and improperly interfered with the performance of a contract between plaintiff and a third person;
 2. That the defendant induced or otherwise caused the third person not to perform the contract; and . . .
To support a claim that the defendant "improperly: acted, the plaintiff must establish that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously.
As previously mentioned, parties are entitled to legitimate and legal business pursuit. The defendant herein have done nothing more nor nothing less. This court incorporates its reasoning incident to the plaintiff's claim of restraint of trade to its reasoning as regards the plaintiff's claim of tortious interference with contractual relations. Further the only agreement the plaintiff claims to have by and among the relationship herein is an agreement with Seaport/Bozzuto. Simply stated, there was no interference with that agreement. CT Page 2509
Nor was the defendant TP guilty of fraud, misrepresentation, intimidation or molestation or did the defendant act maliciously. There is no credible evidence produced by the plaintiff to support these conditions.
Therefore, based on the credible evidence and testimony produced at trial by the plaintiff in its case in chief, the plaintiff has not sustained its burden of proof as regards tortious interference with contractual relations.
The defendant's Motion for Judgment of Dismissal Pursuant to Connecticut Rules of Court § 302 is granted.
John W. Moran Judge of the Superior Court